# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLOTTE CLAPPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-1070-STE |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | ) ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 18-34). The Appeals Council denied Plaintiff's

request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between her amended onset date of August 21, 2012 and her date last insured of December 31, 2015. (TR. 20). At step two, the ALJ determined Ms. Clapper had the following severe impairments: degenerative disc disease; obesity; osteoarthritis; osteoporosis; depressive disorder; and anxiety disorder. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 21).

At step four, the ALJ concluded that Ms. Clapper retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant was able to occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant must have been allowed to sit/stand alternatively once per hour for five minutes each time. The work must have been limited to simple, routine, and repetitive tasks, free of production rate pace.

(TR. 24). With this RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (TR. 32). As a result, the ALJ made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 65-66).

Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 65-66). The ALJ adopted the testimony of the VE and concluded that Ms. Clapper was not disabled based on her ability to perform the identified jobs. (TR. 33-34).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred: (1) at step three and (2) in the consideration of certain evidence.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. STEP THREE

Ms. Clapper alleges that the ALJ "improperly considered critical medical evidence" which reflected that Plaintiff met Listing 1.04(A). (ECF No. 12:2-3). The Court disagrees.

### A. Criteria at Step Three

At step three, the ALJ must determine whether the claimant's impairment is "equivalent to one of a number of listed impairments that the Secretary acknowledged

3

as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). If this standard is met, the claimant is considered *per se* disabled. *Knipe v. Heckler*, 755 F.2d 141, 146 (10th Cir. 1985). The question of whether a claimant meets or equals a listed impairment is strictly a medical determination. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990); 20 C.F.R. §§ 404.1525(c)(3)-(4), 404.1526(b). "The claimant has the burden at step three of demonstrating, through medical evidence, that his impairments "meet *all* of the specified medical criteria" contained in a particular listing. *Sullivan v. Zebley*, 493 U.S. at 530 (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Once the claimant has produced such evidence, the burden is on the ALJ to identify and discuss any relevant listings. *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 n. 3. In doing so, the ALJ must weigh the evidence and make specific findings to support the step three determination. *Clifton v. Chater*, 79 F.3d at 1009.

### B. Listing 1.04

Listing 1.04 outlines the requirements to establish whether a presumptive disability exists in an individual with a disorder of the spine. Listing 1.04(A) requires that the claimant first establish that he has a disorder of the spine, "resulting in compromise of a nerve root (including the cauda equine) or the spinal cord." Listing 1.04. The Listing also requires additional proof that the claimant establish:

[1] [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain,

[2] limitation of motion of the spine,

4

[3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and,

[4] if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04(A).

### C. The ALJ's Step Three Findings

At step three, the ALJ made the following findings:

The claimant has reported neck and back pain and testing indicates osteoporosis. The claimant has generalized body and joint pain associated with arthritis; however, there is no evidence of ankylosing spondylitis or constitutional symptoms or signs at this marked level; nor does she have joint inflammation or deformity in two or more of the major joints resulting in the inability to ambulate effectively or to perform fine and gross motor movements effectively as required by the listings. The medical evidence does not have other required findings of loss of gait and station, nor are there findings of a lack of gross and fine manipulation. The claimant does not have consistent evidence of reflex loss, motor loss, sensory loss, muscle atrophy, or positive straight leg raising, or other findings that would meet the requirements of a listed musculoskeletal impairment or a listed immune system disorder through the date last insured.

(TR. 21).

### D. No Error in the ALJ's Step Three Analysis

In support of her argument that she met Listing 1.04(A), Ms. Clapper cites:

- An MRI dated December 29, 2009 which indicated "[n]arrowing and disc desiccation of L4-5 with a central herniation demonstrated;"

- Findings from a consultative examiner (CE) which noted "SLR testing is positive on the left in the seated and supine positions which was worse with dorsiflexion," and

- "the evidence" mentioned by the ALJ on page 26 of her decision.

(ECF No. 12:2-3). Plaintiff's reliance on this evidence is not persuasive.

First, the MRI findings specifically state: "[n]o gross nerve root displacement is seen." (TR. 788). As stated, Listing 1.04(A) specifically requires that evidence establishing "compromise of a nerve root (including the cauda equine) or the spinal cord." Listing 1.04. Thus, the Court rejects Plaintiff's reliance on the MRI results as evidence that she met Listing 1.04(A).

Second, the Court agrees that the CE's findings indicated positive straight leg testing, both sitting and supine, which would satisfy one element of Listing 1.04(A). *See* Listing 1.04(A); TR. 653. However, the CE made no other findings which would fulfill the remaining elements of the Listing. *See* TR. 652-654. As stated, "[a]n impairment that manifests only some of th[e] [Listing's] criteria, no matter how severely, does not qualify [for the Listing]." *Id. Sullivan*, 493 U.S. at 530. Thus, Plaintiff's reliance on the CE's report is insufficient to satisfy Listing 1.04(A).

Finally, Plaintiff states: "the Medical Evidence of Record (MER) reflects that Ms. Clapper meets a listed impairment. The ALJ mentioned this evidence in her decision, *See* AR 26. Why did she not follow it?" (ECF No. 12:3). Although Plaintiff generally cites to page 26 of the administrative decision, she does not specifically state what evidence the ALJ allegedly discussed which would have satisfied the criteria for Listing 1.04(A). As the Tenth Circuit has recently reiterated, "[I]t is the appellant's responsibility to tie the salient facts, supported by specific record citation, to [her] legal contentions." *Streeter v. Berryhill*, No. 17-5040, ___ F. App'x ___, 2018 WL 679385, at *2 (10th Cir. Feb. 2, 2018), citing *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (internal quotation marks omitted). *See also Kirkpatrick v. Colvin*, 663 F. App'x

646, 649 (10th Cir. 2016) (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments."). Ms. Clapper's failure to identify the evidence on page 26 of the administrative decision or explain how it satisfied Listing 1.04(A) is fatal to her claim.

VI.   THE ALJ'S CONSIDERATION OF CERTAIN EVIDENCE

Next, Plaintiff contends that the ALJ "improperly analyzed" evidence from: (1) treating physician Dr. Judy Magnusson, (2) examining physician Dr. John Hughes, and (3) treating physician Dr. Brent Hisey. (ECF No. 12:4-10). The Court disagrees.

**A.   ALJ's Duty in Evaluating Medical Opinions**

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 404.1527(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, 365 F.3d at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p) (internal quotations omitted). If controlling weight is declined, the ALJ must assess the opinion under a series

of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 404.1527(c).

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at 5. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### B. Dr. Magnusson

On page 31 of the administrative decision, the ALJ discussed three letters from Dr. Magnusson which had been incorporated as part of "Exhibits B3F and B20F" where the physician had recommended that Ms. Clapper be placed on disability and remain off work pending surgery for her osteoporosis and a full recovery. (TR. 31); *see* TR. 516, 519, 522, 754, 755. Regarding this evidence, the ALJ stated:

> It appears this correspondence and paperwork was completed in relation to the claimant's private third party disability insurance. The Administrative Law Judge has considered this statement, but does not treat it as a medical opinion, as it lacks the specificity required for a true medical opinion. It does

8

not contain the doctor's judgment about the nature and severity of the claimant's physical limitations or any information about what activities the claimant is still able to perform. Moreover, "the final responsibility for determining the ultimately issue of disability is reserved to the Commissioner of the Social Security Administration[.]"

(TR. 31). According to Ms. Clapper, "the ALJ alleges that two exhibits—B3F and B20F—were not treated as a medical opinion 'as it lacks the specificity required for a medical opinion[,] [but] this reason is not on the list of factors to consider." (ECF No. 12:4). Plaintiff then: (1) sets forth the ALJ's duty to evaluate medical opinions, (2) discusses other evidence set forth in Exhibits B3F and B20F, outside of Dr. Magnusson's recommendation that Plaintiff remain off work pending surgery, and (3) states that the evidence constituted "medical opinions" that were "not handled properly by the ALJ, nor granted weight." (ECF No. 12:4-6). The Court rejects Plaintiff's arguments.

Ms. Clapper specifically challenges the ALJ's rationale which discounted Dr. Magnusson's recommendation that Plaintiff "be placed on disability and remain off work until she can proceed with surgery and reach a full recovery." *See* ECF No. 12:4-6. The ALJ had discounted the statement because it was: (1) not a true "medical opinion" and (2) concerned an issue which was reserved to the Commissioner. (TR. 31). The Court affirms these rationales as sufficient bases on which to discount Dr. Magnusson's statement.[1]

Pursuant to social security regulations, various factors should be used in evaluating "medical opinions," which, in turn, are defined as "statements from acceptable medical

---

[1] The letters are dated July 19, 2010, July 27, 2010, and September 30, 2010 and are set forth initially in Exhibit B3F and in duplicate at Exhibit B20F. *See* TR. 516, 519, 522, 754, 755.

sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), and [ ] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Here, the ALJ properly found that Dr. Magnusson's statement recommending Plaintiff remain off work pending surgery was not a true "medical opinion," as that term is defined in the regulations. *Compare* 20 C.F.R. § 404.1527(a)(1) *with* TR. 516, 519, 522, 754, 755. Instead, the ALJ correctly concluded that the physician's statement concerned an issue reserved to the Commissioner, which is not subject to evaluation utilizing the regulatory factors as set forth in 20 C.F.R. § 404.1527(a)(1). *See Lackey v. Barnhart*, 127 F. App'x 455, 457-58 (10th Cir. 2005) (noting that when weighing the opinion of an issue reserved for the Commissioner, the ALJ does not have to consider all the factors required to weigh the opinion of an issue not reserved for the Commissioner); 20 C.F.R. § 404.1527(d). Even so, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." SSR 96-5P, 1996 WL 374183, at *3 (July 2, 1996). Rather, "the ALJ must evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Lackey*, 127 F. App'x at 457-58.

Here, the ALJ discussed other opinion evidence from Dr. Magnusson and otherwise stated that she had considered the entire record in making her final determination of disability. *See* TR. 19, 26. Thus, the Court finds that the ALJ fulfilled her duty in evaluating Dr. Magnusson's statement regarding Plaintiff's inability to work. *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (When an "ALJ indicates [s]he has considered all the

10

evidence[,] [the court's] practice is to take the ALJ at [her] word." (internal citation omitted).

### C. Dr. Hughes

Dr. Hughes examined Plaintiff on June 15, 2015 and wrote a letter which Ms. Clapper characterizes as the "close to hopeless" letter. (ECF No. 12:7). In the letter, Dr. Hughes states that Plaintiff is "osteoporotic" which he describes as "chronic in nature and probably will never go away." (TR. 770). As Plaintiff states, Dr. Hughes does state that Ms. Clapper is as "about as close to a hopeless case as you can get." (TR. 770). However, the physician also states that "it would be possible to perhaps find a job [Plaintiff] can do on her own; that is to be self-employed where perhaps she could work at home on a computer or that type of thing and do a useful work situation without aggravating her chronic lumbar pathology." (TR. 770). In evaluating Dr. Hughes' opinion, the ALJ stated: "this report is supportive of the [Plaintiff's] ability to perform work activity and is given some weight and consideration." (TR. 27).

Ms. Clapper challenges the ALJ's consideration of Dr. Hughes' opinion by stating that:

- it "was not even close to the truth[;]"
- "[i]f it is a hopeless case, [Dr. Hughes] also thinks [Plaintiff] cannot work[;]" and
- the physician's statement about Plaintiff working from home "is not full time employment."

(ECF No. 12:7-8). Plaintiff's contentions have no merit.

11

First, the ALJ's treatment of Dr. Hughes' opinion—i.e., that it is "supportive of the ability to perform work activity"—is truthful—the physician opined that Plaintiff could perform work at home without aggravating her osteoporosis. TR. 770. Second, Plaintiff's statement that Dr. Hughes' characterization of the situation as a "hopeless case" does not equate with a finding that Dr. Hughes also thinks that Ms. Clapper cannot work—in fact, he stated just the opposite. *See* TR. 770. Finally, Plaintiff's statement about Dr. Hughes limiting Plaintiff to less than full time work is simply untrue—the physician made no such findings. *See* TR. 770. Accordingly, the Court rejects Ms. Clapper's challenge to the ALJ's treatment of Dr. Hughes' opinion.

### D. Dr. Hisey

On November 18, 2011, Dr. Hisey wrote a letter to Liberty Mutual in relation to Ms. Clapper's workers compensation claim. (TR. 758-59). In the letter, Dr. Hisey stated: "[a]t this time [Plaintiff] can work if there is a job available with a 10 pound weight lifting restriction. Otherwise, I would consider her temporarily totally disabled." (TR. 759). In considering Dr. Hisey's report, the ALJ stated:

> It is significant that these limitations were given in the context of the claimant's workers' compensation claim while she was under active medical care. There is no evidence that Dr. Hisey extended this limitation on a permanent and continuing basis. Likewise, there is no other evidence of record imposing any such lifting limitation. Therefore, the same is noted, but given minimal probative value concerning permanent functional limitations in the determination of the claimant's residual functional capacity.

(TR. 31-32). Offering two arguments, Ms. Clapper criticizes the ALJ's treatment of Dr. Hisey's 10-pound lifting limitation, but neither of Plaintiff's arguments are valid.

First, Plaintiff seems to believe that the ALJ had discounted Dr. Hisey's opinion because the doctor had rendered it in connection with a workers' compensation claim. According to Ms. Clapper, "there is not one scintilla of proof that a workers' compensation patient is treated any differently by a doctor than any other patient." (ECF No. 12:8). Plaintiff's argument misses the import of the ALJ's reference to Plaintiff's worker's compensation claim. The ALJ did not discount the opinion because it had been rendered in connection with a workers' compensation claim, but because the limitation had been temporary. *See* TR. 31-32. Next, Plaintiff states: "[i]f [the ALJ] thought [the restriction] was temporary, she should have followed the law and re-contacted the doctor for clarification." (ECF No. 12:8). The Court disagrees.

In *White v. Barnhart,* 287 F.3d 903, 907–08 (10th Cir. 2001), the court held that the ALJ has a duty to "recontact a treating physician when the information the doctor provides is inadequate to . . . . determine whether you [the claimant] are disabled." (alteration in original) (internal citation omitted). In *White*, the plaintiff argued that the ALJ had a duty to recontact a physician for clarification of an opinion that the ALJ had rejected. *Id.* at 908. The Court disagreed, noting "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the "evidence" the ALJ "receive[s] from [the claimant's] treating physician" that triggers the duty. *See id.* The ALJ in *White* believed the information he received from the treating physician was "adequate" for consideration; that is, it was not so incomplete that it could not be considered. *See id.* However, the ALJ also believed that the conclusion

13

the physician had reached was insufficiently supported by the record as a whole. *Id.* *White* is controlling.

Here, the ALJ rejected Dr. Hisey's 10-pound lifting limitation, not because he believed that Dr. Hisey's records were incomplete, but, in part, because "there [was] no other evidence of record imposing any such lifting limitation." (TR. 32). The ALJ clearly believed that Dr. Hisey's lifting limitation was "adequate" for consideration, because he considered it. He simply rejected it because: (1) it was temporary and (2) no other physician had rendered a similar opinion. (TR. 32). These reasons are valid and the Court affirms. *See Hicks v. Colvin*, No. 14-1082-RDR, 2015 WL 1912293, at *4 (D. Kan. Apr. 27, 2015) (affirming ALJ's rejection of opinion because the limitations opined therein had been "temporary"); 20 C.F.R. §404.1527(c) (noting that "consistency" with the record as a whole is a valid factor in evaluating a medical opinion).

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on May 9, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE